UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON LYNN HOLLADY,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

CIV. NO.: 05-40004
CRIM. NO.: 03-50046

District Judge Paul V. Gadola
Magistrate Judge Steven D. Pepe

**REPORT AND RECOMMENDATION
ON
PETITIONER'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT A SENTENCE (DKT. #20)**

Petitioner was indicted on September 3, 2003, on two counts of tax evasion. Petitioner waived proceedings on the indictment (Dkt. #14), and on April 13, 2004, he pled guilty to a first superseding information charging him with willfully filing a false tax return in 1997 (Dkt. #13, Docket and Minute Entry, 04/13/04). Petitioner was sentenced on September 9, 2004, to fifteen months of imprisonment and one year of supervised release (Docket Minute Entry, 09/09/04, Judgment, Dkt. #17). Petitioner filed this motion to vacate on January 10, 2005 (Dkt. # 20), and Respondent filed a response on February 7, 2005 (Dkt. #25). Petitioner then filed a reply to the response on February 24, 2005 (Dkt. #26).

I. **BACKGROUND**

The parties stipulated in a Rule 11 Plea Agreement to the following facts underlying Petitioner's conviction (Dkt. #12, pp. 2-3).

1

Throughout 1996 and 1997 Jason Hollady practiced medicine and received payments for his services under the corporate name of Durand Clinic, P.C. His accountant had instructed him to deposit all payments for his medical services into a business bank account, so that the accountant would be able accurately to determine the business's taxable income. During 1996 and 1997, however, Dr. Hollady deliberately diverted selected cash payments and checks received for his medical services. He deposited the checks to his personal credit card account with MBNA America or to his personal investment accounts with Janus Funds. The diverted cash was used by Dr. Hollady for personal, as well as business, expenditures.

Because these funds were diverted from the business bank account, Dr. Hollady's accountant was unaware of them, and did not include them as income on either the corporate tax returns for Durand Clinic, P.C., or Dr. Hollady's joint individual tax returns. Dr. Hollady signed these returns under penalty of perjury, knowing that they were not true and correct, since they did not include as taxable income the checks and cash he had diverted from the business bank account. He thereby knowingly failed to declare on his joint individual federal income tax returns $179,198.74 in taxable income he received during 1996, and $102,295.92 in taxable income he received during 1997.

The First Superseding Information charged Petitioner with one count of willfully filing a false tax return in violation of 26 U.S.C. § 7206(1), as follows:

That on or about October 14, 1997, in the Eastern District of Michigan, JASON LYNN HOLLADY, a resident of Durand, Michigan, willfully did make and subscribe a joint U.S. Individual Income Tax Return, Form 1040, for the year 1996, which was verified by a written declaration that it was made under the penalties of perjury, and was filed with the Internal Revenue Service, which said return he did not believe to be true and correct as to every material matter, in that said return states his and his wife's joint taxable income for 1996 was the sum of $110,553, whereas, as he then and there well knew and believed, his and his wife's joint taxable income for 1996 was substantially in excess of that amount; all in violation of Section 7206(1) of Title 18, United States Code.

First Superseding Information, Dkt. #13, pp. 1-2.

Petitioner executed a Rule 11 Plea Agreement (Dkt. #12), and pled guilty to Count One on September 9, 2004, for which he was sentenced to fifteen months imprisonment and one year of supervised release (Judgment, Dkt. #17). Petitioner also paid $108,310.00 to the United States Department of the Treasury, which the parties agreed was not to be considered restitution (Dkt.

#12, p. 5).  Petitioner did not file an appeal, and his judgment therefore became final on September 23, 2004, the last day on which he could have filed an appeal under Federal Rule of Appellate Procedure 4(b).  Petitioner has served his prison sentence and period of supervised release.  Yet, "[w]here a prisoner's sentence is not fully expired at the time of filing, but expires during the litigation of the collateral attack, the proceeding does not become moot."  *Hampton v. United States*, 191 F.3d 695, 697 (6th Cir.1999) (citations omitted).

## II.    DISCUSSION

Petitioner makes the following arguments in his Motion to Vacate:

(1)    His guideline sentencing range was incorrect, because it was based on the tax loss for the years 1996 and 1997, whereas he had pled guilty to tax evasion only for the year of 1996.

(2)    His retained counsel was ineffective for failing to object to the use of the 1997 tax loss in calculating the sentencing guideline range for the 1996 conviction.

(3)    He is entitled to an evidentiary hearing under Federal Rule of Criminal Procedure 32 to determine his tax liability, and his counsel was ineffective for failing to request one.

(4)    Petitioner is entitled to re-sentencing under *Blakely v. Washington*, 542 U.S. 296 (2004).

He also asserts in an affidavit accompanying the motion that:

(4) My attorney informed me that I must accept the figure [of $108,310.00] and had "no choice" but to sign the agreement or face trial that could result in a lengthy term of imprisonment.  I asked my attorney if the figure could be argued and his response was "No";
(5) My attorney never told me that I could have an expert witness to determine the correct amount and appear in Court and/or submit an Affidavit;

(6)  My attorney never informed me that I could only be assessed in relation to the criminal liability portion which could enhance my sentence. I knew I was pleading guilty to a crime of filing a false tax return for the 1996 tax year only.

Dkt. #20, p. 15.[1]

## A.       Standard of Review under 28 U.S.C. § 2255

A prisoner seeking relief under Section 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).  Where the petitioner's motion alleges a non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

A petitioner is procedurally barred from raising claims in a Section 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal.  *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996).  Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under Section 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).

---

1  Page number reflects this Court's ECF pagination.

The procedural default rule does not apply to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). Consequently, such claims may be raised for the first time in a Section 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir. 1995).

### B. Petitioner's Claim (4) – Whether Petitioner Is Entitled to Re-sentencing under *Blakely v. Washington*, 542 U.S. 296 (2004).

Petitioner asserts that he is entitled to re-sentencing under *Blakely v. Washington*, 542 U.S. 296 (2004). Petitioner neither raised any contemporaneous objections at the sentencing nor filed an appeal, which is required by *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Yet, he argues that he has not procedurally defaulted his *Blakely* claim because the sentence he was given was conditional.

> The cause for not raising the issue on direct appeal is that the Court made its sentence conditional upon the outcome of the *Booker* case. The issue of the court's discretion to sentence below the guidelines was raised at the time of the sentencing. Rather than give alternative sentences, the Court told the Defendant to bring a motion for re-sentencing if *Booker* decided that the Court had discretion. The Defendant is merely following the Court's directive to bring the matter before the Court so that the sentencing process can be completed. The Government has argued in response to a separate motion for re-sentencing that the Court lost jurisdiction at the time of the sentencing, an alternative sentence cannot now be considered. But, it was clear at the time of the sentencing that the Court did not intend to loose [sic] jurisdiction; rather than requiring an appeal, it was the Court's desire to have the matter brought before it if *Booker* granted discretion. There was no objection to that procedure at that time of the sentencing by the Government. Either the Court has retained jurisdiction; or, there is sufficient cause for the issue not to have been raised in a direct appeal for it to now be raised in the Defendant's *in pro per* motion.

Defendant's Reply to Government's Response to Defendant's Motion to Vacate Sentence, Dkt.

#26, p. 2. In fact, Petitioner's sentence was *not* conditional, which the Court made clear at the

sentencing hearing. The court simply delayed the start date of Petitioner's term of imprisonment

to await the anticipated decision by the Supreme Court in *United States v. Booker*, 543 U.S. 220

(2005).

> [THE COURT:] Now I want to also indicate that the issue of the - - of the legality and constitutionality of the sentencing guidelines is presently at issue. And the matter is going to be argued before the United States Supreme Court. It's the first matter on the - - on the Court's docket this fall when the Court convenes. And I believe that's the first Monday in October if I'm not mistaken.
>
> And I'm therefore going to - - I'm going to stay the - - I'm therefore going to provide that the sentence imposed in this matter by the Court shall not require him to report to the designated institution prior to November 15th, 2004. That's to await a possible ruling by the Supreme Court on that particular matter.
>
> And I'm going to indicate that in the event that the - - that the sentencing guidelines are determined to be invalid and unconstitutional, then we will have to convene a -- reconvene a sentencing hearing at that point. The Court -- the Court's position is that the sentencing guidelines are legal and constitutional and I have sentenced in accordance with those guidelines at this stage of the proceedings.
>
> . . .
>
> **I might also inquire that I'm not - - I'm not imposing an alternate sentence in the event that the United States Supreme Court invalidates the sentence in any way under the federal sentencing guidelines, but I'm reserving the - - the execution of the sentence for a date beyond the date that I believe the Supreme Court will issue a definitive ruling on the - - on the prior decision made by the Supreme Court in the <u>Blakely v. Washington</u> matter.**
>
> But I'm not - - I am not at this time imposing any alternate sentence. That will be addressed only if the Supreme Court rules the sentencing guidelines are invalid or unconstitutional.

Dkt. # 28, pp. 27-28 (emphasis added). Yet, the *Booker* decision did not come down until

January 12, 2005, almost two months after the date on which Petitioner was to have reported to

the Bureau of Prisons (November 15, 2004), and more than three months after Petitioner's

judgment became final. Therefore, at the time that this Court handed down Petitioner's

sentence, the sentencing guidelines as applied were mandatory. After the Supreme Court's decision in *Booker*, Petitioner filed a motion for re-sentencing, which was denied without prejudice by Magistrate Judge Wallace Capel, Jr., because the same issues had been raised in Petitioner's § 2255 Motion to Vacate.

Although the sentencing court intimated that Petitioner may be able to return for a re-sentencing after the Supreme Court decided *Booker*, "it is axiomatic that a court speaks through its orders." *Recker v. Newcourt Credit Group, Inc.,* 2002 WL 31548698, *1 (E.D. Mich. 2002) (citing *In re Roy C. Markey,* 144 BR 738, 745 (W.D. Mich. 1992), *reversed on other grounds*). Petitioner was sentenced without any conditions or alternative sentences.[2] No court rule authorizes a court to reconsider its sentence after the time for appeal has elapsed (*cf.* Federal Rule of Criminal Procedure 35(a), which authorizes the court to correct a clerical error within seven days of its entry).

Petitioner's claim under *Blakely* is therefore now governed by the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005). *See Humphress v. U.S.*, 398 F.3d 855, 860 (6th Cir. 2005). In *Booker*, the Supreme Court held that the Sixth

---

2  It is also significant that the Court at sentencing noted its desire to reconsider the matter "only if the Supreme Court rules the sentencing guidelines are invalid or unconstitutional." The Supreme Court in Justice Stevens' majority opinion answered in the affirmative the question of "Whether the Sixth Amendment is violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant." *Booker,* 543 U.S. at 245. (This portion of the *Booker* decision was referred to as the "Sixth Amendment holding" portion of the opinion. *Id.* at 268.) Yet, to avoid the United States Sentencing Guidelines from being invalid or unconstitutional, the Court, in a separate opinion by Justice Breyer (involving a different majority of the justices except for Justice Ginsburg who joined both Justices Stevens' and Breyer's opinions), severed and excised from the from the Sentencing Reform Act of 1984(Act) 18 U.S.C.. § 3553(b)(1), which section makes the Federal Sentencing Guidelines mandatory, and also the related Section 3742(e) on the standard of review on appeal. As modified, this avoided holding the Sentencing Guidelines invalid or unconstitutional and made them advisory thereby restoring a greater range of discretion to federal sentencing courts. *Id.* at 246. (This portion of the *Booker* decision was referred to as the "remedial interpretation of the Sentencing Act" portion of the opinion. *Id.* at 246.)

Amendment right to trial by jury is violated when a sentencing judge imposes an enhanced

sentence[3] under the United States Sentencing Guidelines, based on the judicial determination of

a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant.

*Booker*, 543 U.S. at 244. Yet, as noted in the analysis of the next section of this Report, this part

of the *Booker* decision is not implicated in Petitioner's claim because his sentence was based on

facts admitted by the defendant. The Supreme Court remedied the unconstitutionality of the

sentencing scheme by excising the portion of the guidelines that made them mandatory. Thus,

prior sentencing by federal judges applying the Guidelines as mandatory could violate *Booker*'s

requirement that the Guidelines be treated as advisory, even if the sentence did not exceed the

maximum authorized by the facts established by a plea of guilty or a jury verdict – or using

*Booker's* terms, there could be a prior violation of "remedial interpretation of the Sentencing

Act" portion of the opinion even if there was not a violation of the "Sixth Amendment holding"

portion of the opinion.

     The Supreme Court in *Booker* applied its "new rule" holding to direct review appeals. It

would also obviously be applicable to sentencing where the judgment is not yet final. Yet,

Petitioner's sentence and judgment is final and there was no direct review appeal. The Sixth

Circuit and other circuits have held that *Booker* does not apply retroactively to challenges under

§ 2255 to criminal cases that became final before January 12, 2005, the date *Booker* was issued.

*Humphress v. United States*, 398 F.3d 855, 860-863 (6th Cir. 2005); *see also Guzman v. United

States*, 404 F.3d 139 (2nd Cir. 2005); *Lloyd v. United States*, 407 F.3d 608 (3rd Cir. 2005);

*United States v. Morris*, 429 F.3d 65 (4th Cir. 2005); *United States v. Gentry*, 432 F.3d 600 (5th

---

3 An enhanced sentence is a sentence exceeding the maximum sentence authorized by the facts established in a
guilty plea or jury verdict.

Cir. 2005); *United States v. Cruz*, 423 F.3d 1119 (9th Cir. 2005). As stated above, Petitioner's conviction became final on September 23, 2004; therefore, *Booker* does not apply to Petitioner's Motion to Vacate. Thus, to the extent that Petitioner argues that his sentence violated his rights under *Blakely*, such claims should be dismissed.[4]

Petitioner has not specifically argued that either of his counsel was ineffective for failing to seek to adjourn his plea or his sentencing (or seeking to delay entry of judgment on the latter) until such time as *Booker* was decided and the mandatory provisions of the Sentencing Guidelines clarified. Yet, this is the argument that needs to be asserted and to succeed in order for Petitioner's procedural default to be avoided.[5] While in hindsight it may seem that this

---

4 Even if Petitioner could raise his argument (4), which is a claim that he is entitled to a re-sentencing under *Blakely,* this claim would fail to the extent it is an argument under the "Sixth Amendment holding" of *Booker.* In noting that its holding was available to federal defendants on direct appeal, the Justice Souter *Booker* opinion added:

> That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error" test. It is also because, in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.

*Booker* , 543 U.S. at 268.

Here the "Sixth Amendment holding" issue was not raised by Petitioner, nor would it have prevailed if it were raised as discussed in the next section of this Report. Nor was the mandatory versus discretionary issue of the Sentencing Guidelines (what became the "remedial interpretation of the Sentencing Act" part of the *Booker* holding) properly raised at Petitioner's plea or sentencing. Whether these procedural defaults are excused because failure of Petitioner's counsel to assert them constituted ineffective assistance of counsel is addressed in the body of this Report in this and the following sections.

5 *Strickland v. Washington*, 466 U.S. 668, 687 (1984), held that to demonstrate ineffective assistance of counsel:

> [f]irst, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

would have been the prudent course, ineffective assistance of counsel is not measured by the commonly clearer vision of hindsight.[6]  Here a claim of ineffective assistance of counsel  – whether based on not seeking to defer the plea, or the sentencing, or the entry of judgment until after *Booker* was decided, and/or for failing to reserve the right to appeal the mandatory versus discretionary issue in the Rule 11 agreement or taking such an appeal – any and all of these claims  should fail.  Although the outcome in this case,  particularly with respect to the effect on Dr. Mathews, was unfortunate, it is not reasonable to assume that Petitioner's counsel should have predicted the counterintuitive outcome in *Booker.*  Justice Stevens in his individual dissent in part noted that saving the Sentencing Guidelines by the severability analysis revising and rendering them advisory was sought by no party or *amicus* to the case nor suggested by any prior federal court addressing the issue.  *Booker,* 543 U.S. at 282.  Justice Scalia in his individual dissent in part was even less charitable, noting the remedial severability analysis was not only not argued for by any party or *amicus* but was, to his thinking, a legal analysis from beyond the looking glass of *Alice in Wonderland.  Booker,* 543 U.S. at 309.  Justice Breyer's approach came as a surprise to eminent legal scholars and practitioners around the country.  It is unreasonable to assume Petitioner's counsel should have anticipated this outcome and were ineffective for failing to delay the plea or sentencing proceedings until *Booker* was decided or failing to preserve this

---

6  As *Strickland* stressed:

> it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

466 U.S. at 689.

an issue for appeal.  If Petitioner's attorneys were ineffective in this failing, what defense counsel shortly prior to *Booker* who also failed to preserve the discretionary versus mandatory issue would not also be ineffective?  If nearly all federal defense counsel shortly before *Booker* were to be found ineffective for failing to preserve this discretionary versus mandatory issue, procedural default is erased in all of those cases. If this were to occur, the non-retroactivity finding of *Humphress* for the *Booker* case would also be largely eviscerated, would open up all proceedings that took place immediately before *Booker* to ineffective assistance of counsel claims and would have the effect of making *Booker* practically retroactive.

Thus, it cannot be determined that Petitioner's procedural default is excused by any claims of ineffective assistance of counsel.

**C.      Petitioner's Claim (1) – Whether Petitioner's Guideline Sentence Was Incorrect Because It Was Based on the Tax Loss in Both 1996 and 1997.**

Petitioner argues that his sentence was incorrect because he pled guilty to tax evasion in 1996 only, but the total tax loss to the government in both 1996 and 1997 was used to calculate his sentence.[7]  It is unclear whether Petitioner's claim is merely a statutory one under the Sentencing Guidelines or also a Sixth Amendment claim under *Booker.*  Even if it is the latter, because the calculations are simple and straightforward and are derived from matters to which Petitioner admitted in his plea agreement, there is no *Booker* violation.

---

7  Petitioner was sentenced according to the 1997 United States Sentencing Guidelines (Dkt. #12, p. 11), as required by *United States v. Nagi,* 947 F.2d 211, 213 (1991) ("[W]hen the Guidelines in effect at the time of sentencing provide for a higher range than those in effect at the time the crime was committed, an ex post facto problem exists and the court must not impose a sentence in excess of that allowed by the older Guidelines" (citing *Miller v. Florida,* 482 U.S. 423 (1987)).  All references to the Sentencing Guidelines, therefore, shall be to the 1997 version.

Petitioner is procedurally defaulted in raising his Claim (1) unless he can demonstrate ineffective assistance of counsel as cause for this default.[8] Because there is no *Booker* or any statutory violation, as noted below, there can be no successful claim of ineffective assistance of counsel in failing to assert statutory or constitutional claims, because such arguments would be futile.[9]

Petitioner stipulated in his Rule 11 Plea Agreement that a sentence of no more than the mid-point of the sentencing guideline range that the court found to be applicable would be an appropriate disposition of the case (Dkt. #12, p. 4). He also stipulated, in a non-binding recommendation, to an adjusted offense level of 14, and a guideline sentence range of 12 to 18 months (Dkt. #12, pp. 11, 14). This sentencing guideline calculation was based on a tax loss of more than $70,000. Yet, he reserved the right to argue that his tax loss was less than $70,000, which would have yielded a shorter sentencing guideline range. Petitioner did not argue that his tax loss was less than $70,000 at the sentencing, nor did he make any contemporaneous objections to the court's calculation of his sentence based on a tax loss of more than $70,000. This Court sentenced Petitioner to fifteen months imprisonment and one year supervised release, the mid-point of the sentencing guideline range the Court found applicable.

---

8  Petitioner separately raises ineffective assistance of counsel in his claims (2) and (3) which are separately analyzed in the next section.
9  "If a reviewing court can determine lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient." *United States v. Boyd*, 259 F. Supp. 2d 699, 705 (W.D. Tenn. 2003) (citing *Strickland*, 466 U.S. at 697).

Yet, Petitioner alleges that ineffective assistance of counsel prevented him from arguing the issue at his sentencing.[10] Assuming this to be correct, this claim would not be procedurally defaulted.[11]

Petitioner states in his motion to vacate that:

> Petitioner was wrongfully enhanced for taxes in 1996 and 1997. The Superseding Information charged one count of filing a false tax return in 1996. The Court merely adopted the total amount as assessed by the Government and the Probation Department in applying 18 USC [Section] 2T.1.1. That amount of $108,310.00 of the alleged amount due represented a combined total for the years 1996 and 1997. As part of his Plea Agreement, Petitioner agreed to pay the $108,310.00 which was undifferentiated as to which portion would be applicable to which years. The Information, charged one count 26 USC [Section] 7201 (False Tax Return) for the year 1996. No other year was alleged as a charged offense, to which relevant conduct could be charged. The tax liability for 1996 was $67,820.00 according to the Presentence Investigation Report (PSR, page 7, n. 16). The PSR states that amount was from an IRS Computation Sheet. Petitioner was enhanced two (2) points for an amount more than $70,000.00. The 1996 tax is the only criminal charge which the Petitioner was convicted. The two points are in error.

Dkt. #20, p. 3. He adds, "Pursuant to Petitioner's Plea Agreement, the only admitted fact by the Petitioner is his guilt of filing a false return in 1996 (Dkt. #20, p. 4)." The latter statement is incorrect because Petitioner stipulated to the facts underlying his conviction, as quoted below:

---

10  *See* the *Strickland v. Washington* standards for ineffective assistance of counsel above in footnote 5.

11  Petitioner retained two attorneys during his plea hearing and sentencing hearing: Ms. Edith Thomas from Fallbrook, California, and Mr. Charles Grossman from Flint, Michigan. Ms. Thomas was listed as Petitioner's counsel from October 27, 2003, to September 24, 2004 (which included Petitioner's plea hearing date of September 9, 2004). Mr. Grossman is listed as Petitioner's counsel starting on June 18, 2004 until the present time, but he appeared in court with Petitioner's and Ms. Thomas's consent at the plea hearing on September 9, 2004. Petitioner does not specify in his motion whether he is accusing Ms. Thomas or Mr. Grossman in particular of ineffective assistance. Any allegations of ineffective assistance of counsel will therefore be presumed to refer to Petitioner's legal team in its entirety.
    No evidentiary hearing is needed to determine what Petitioner's attorneys did or did not tell him because even assuming the correctness of Petitioner's assertions, there is no showing that the arguments he claims his attorneys should have made were meritorious. Thus, either Petitioner fails to meet the first prong of the Strickland test because his attorneys did not fail to raise any appropriate legal issue on sentencing, or alternatively, even if certain legal issues were not properly raised by Petitioner's attorneys in violation of the first prong of the *Strickland* text, any attorney error was not prejudicial under the second prong of *Strickland,* because the issue would have failed on the facts of this case.

He thereby knowingly failed to declare on his joint individual federal income tax returns $179,198.74 in taxable income he received during 1996, and $102,295.92 in taxable income he received during 1997.

Petitioner argues that *United States v. Daniels*, 856 F.2d 540, 541 (6th Cir. 1993), supports his argument that his 1997 tax loss should not have been considered for the purposes of relevant conduct. Petitioner implies that uncharged conduct cannot be considered relevant conduct when determining the base offense level. In *Daniel*, the 6th Circuit explained that:

In determining the base offense level for tax evasion, the court looks to the "tax loss." United States Sentencing Commission, Guidelines Manual, § 2T1.1 (Nov. 1990). Application Note 2 of section 2T1.1[12] explains that "tax loss" is defined as "what is commonly called the 'criminal deficiency,'" and states that this amount is to be determined by the same rules applicable in determining any other sentencing factor. Application Note 3 of section 2T1.1 states that when a court is "[d]etermining the total tax loss attributable to the offense[ ], all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates the conduct is clearly unrelated." *Id.* Reading Application Notes 2 and 3 together, and in light of the unique nature of the tax laws, we find that "all conduct violating the tax laws" must refer to all relevant criminal conduct underlying the charged offense.

*Daniel*, 956 F.2d at 544.

The relevant portion of section 7201 defines as criminal conduct, "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title...." 26 U.S.C. § 7201 (1991). To convict someone under section 7201, the

---

12  Application Note 2 to Section 2T1.1 provides that:

In determining the total tax loss attributable to the offense (see §1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated. The following examples are illustrative of conduct that is part of the same course of conduct or common scheme or plan: (a) there is a continuing pattern of violations of the tax laws by the defendant; **(b) the defendant uses a consistent method to evade or camouflage income, e.g., backdating documents or using off-shore accounts; (c) the violations involve the same or a related series of transactions;** (d) the violation in each instance involves a false or inflated claim of a similar deduction or credit; and (e) the violation in each instance involves a failure to report or an understatement of a specific source of income, e.g., interest from savings accounts or income from a particular business activity. These examples are not intended to be exhaustive.

(emphasis added).

government must show the existence of a tax deficiency, willfulness, and an affirmative act constituting an evasion or an attempted evasion of the tax.

*Daniel*, 956 F.2d at 542 (citations omitted).

Petitioner's stipulation to the factual basis of his conviction presents what can only be considered one common scheme or plan of criminal conduct. For example:

> **Throughout 1996 and 1997** Jason Hollady practiced medicine and received payments for his services under the corporate name of Durand Clinic, P.C. . . . **During 1996 and 1997**, however, Dr. Hollady deliberately diverted selected cash payments to his personal credit card account . . . He thereby knowingly failed to declare on his joint individual federal income tax returns $179,198.74 in taxable income he received in 1996, and $102,295.92 in taxable income he received during 1997."

Dkt. #12, p. 2-3 (emphasis added). Petitioner has not shown that his tax loss in 1997 was a civil deficiency, nor has Petitioner argued, either in this motion or at any stage of his criminal proceedings, that his conduct in 1996 and 1997 was unrelated. The Sixth Circuit's holding in *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994), applies to Petitioner's case as well:

> For sentencing purposes, the use of tax loss resulting from uncharged conduct is authorized by § 1B1.3, the "relevant conduct" provision of the Guidelines. For tax offenses, application note two to § 2T1.1 states that in determining a defendant's total tax loss, "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." While we have previously held that civil tax liability is not part of the underlying criminal conviction and thus cannot be taken into account in sentencing, *United States v. Daniel*, 956 F.2d 540, 544 (6th Cir.1992), the criminal conduct here is clearly part of the same course of conduct and may therefore be counted. *See United States v. Harvey*, 996 F.2d 919, 922 (7th Cir. 1993) (interpreting *Daniel* to permit non-charged criminal tax loss); *United States v. Meek*, 998 F.2d 776, 783 (10th Cir. 1993) (same).

Therefore, under Section 7201 and the Sixth Circuit's holdings in *Daniel* as interpreted by *Pierce*, Petitioner's tax loss for the purposes of relevant conduct must be the total tax loss that occurred in 1996 *and* 1997.

Petitioner has also argued that prior to sentencing, all taxes due as a result of any criminal or civil proceeding were paid in aggregate. Yet, the terms of the Rule 11 Plea Agreement specifically stated that the court could not order restitution, and that the Internal Revenue Service would assess the exact amount of tax, penalties and interest owed to the Department of Treasury. Petitioner's payment of $108,310.00 was to "facilitate this process" only.[13] Regardless, "the tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." U.S.S.G. § 2T1.1(c)(5).

It is thus clear that Petitioner in his plea agreement acknowledged under-reporting $102, 295.92 in taxable income he received during 1997, as well as $179,198.74 in taxable income he received during 1996, and he further impliedly acknowledged owing IRS tax, penalties, and interest in excess of $100,000. But regardless of the amount Petitioner agreed to pay IRS, Petitioner does not dispute the Pre-sentence Investigation Report determination that the tax liability for 1996 was $67,820.00 according to an IRS Computation Sheet. Rather, he contests the calculation of the base offense level of 14 based on a tax liability amount of more than $70,000.00.[14] Yet, *Pierce,* decided after *Daniels,* interprets § 1B1.3 of the Guidelines to

---

13 The agreement provides as follows:

> Restitution: The parties agree that the court may not order restitution, and that the exact amount of tax, penalties, and interest owed by Dr. Hollady to the Department of Treasury will be assessed by the Internal Revenue Service. To facilitate this process, the parties agree that **before sentencing, Dr. Hollady:**
> 1) will pay to the United States Department of Treasury the sum of $108,310.00;
> 2) will file **amended** individual income tax returns for the tax years 1996-1998;
> 3) will file **individual** income tax returns for 1999-2002; and
> 4) will file **corporate** income tax returns for Durand Clinic, P.C. for 1995 and 1998-2002.

Rule 11 Plea Agreement, Dkt. #12, p. 5 (emphasis in original).

14 Although Petitioner has alleged that he was "enhanced two points" for a tax loss greater than $70,000, Petitioner's sentence was not in fact "enhanced" by any factor. Rather, his base offense level was calculated according to the tax table in Section 2T4.1, which in 1997 required a base offense level of 14 for a tax loss greater than $70,000.

include tax loss resulting from uncharged criminal conduct where that conduct is clearly part of the same course of conduct as is the case here.

Note (A) to U.S.S.G. 2T1.1(c)(1) provides that

If the offense involved filing a tax return in which gross income was under-reported, the tax loss shall be treated as equal to 28% of the unreported gross income (34% if the taxpayer is a corporation) plus 100% of any false credits claimed against tax, unless a more accurate determination of the tax loss can be made.

Using Note (A) to calculate the loss, Petitioner's tax loss, based on the facts that he admitted in his Rule 11 Plea Agreement, resulted in a total of $78,818.50 in unreported income [$102,295.92 (unreported gross income in 1996) + $179,198.74 (unreported gross income in 1997) = $281,494.66 x 0.28 = $78,818.50.

Alternatively, assuming the unchallenged tax liability for 1996 of $67,820.00 in the Pre-sentence Investigation Report, one would need $2,180 in additional tax liability on the 1997 unreported income to reach $70,000 tax loss threshold for the base offense level that the Court used in sentencing Petitioner. This Court can take judicial notice of the 1997 Tax Rate Schedules for married couples filing jointly, which was 28% for adjusted gross income over $99,600.[15] Twenty-eight percent of the unreported additional 1997 income of $102,295.92 is $28,642.85 in additional tax loss to the IRS for 1997. This amount far exceeds the $2,180 needed to reach $70,000 tax loss threshold for the 14 point base offense level the Court used in sentencing Petitioner.

Thus, there was no Sixth Amendment *Booker* error nor any statutory Sentencing Guideline error in calculating the tax loss used at Petitioner's sentencing. Thus, there was no ineffective assistance of counsel in not pressing these claims at sentencing. Thus, Petitioner's

---

15  http://www.unclefed.com/IRS-Forms/taxtables/1997_i1040trs.pdf.

Claim (1) is insufficient to warrant a modification of Petitioner's sentence.

### D.    Petitioner's claims (2) and (3) – Ineffective Assistance of Counsel

As noted above, Petitioner retained two attorneys during his plea hearing and one attorney during his sentencing hearing, and he does not specify in his motion whom he is accusing of ineffective assistance. Thus, his allegations of ineffective assistance of counsel will therefore be presumed to refer to either or both attorneys.

Petitioner has alleged that his counsel either failed to inform him of or gave him incorrect information about his rights at several stages of his proceedings. First, he states that his counsel told him that Petitioner had no choice but to either accept the figure of $108,310.00 in the plea agreement or face trial that could result in a lengthy term of imprisonment. When he asked his attorney if such figure could be argued, the response was "no." According to Petitioner's own allegations, Petitioner's counsel did not inform Petitioner that he had no choice at all; rather, his counsel informed him that he had a choice between accepting the plea agreement or facing trial, which could result in a term of imprisonment of three years. Petitioner does not offer any supporting argument as to why this advice was incorrect or illegal.

Second, Petitioner alleges that his counsel failed to inform him that he could have requested a hearing under Rule 32 challenging facts in the pre-sentence report, at which an expert witness could appear in court or submit an affidavit in order to determine the correct tax liability. Petitioner referred to Federal Rule of Criminal Procedure 32(c)(1), which was applicable at his sentencing, but is now Federal Rule of Criminal Procedure 32(i)(3).[16] It

---

16  Rule 32(c)(1) previously provided that "[f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Fed.R.Crim.P. 32(c)(1) (1999). But on December 1, 2002, amendments to the Federal Rules of Criminal Procedure replaced Rule 32(c)(1) with Rule 32(i)(3).

appears that Petitioner is arguing that his counsel should have requested to introduce evidence to the court under what is now Federal Rule of Criminal Procedure 32(i)(2). The rule provides that parties may introduce evidence on objections to the pre-sentence report. In this case, during his sentence, the Court asked Petitioner directly if he had reviewed the pre-sentence report, to which Petitioner responded affirmatively (Dkt. #28, pp. 3-4). Petitioner's counsel told the Court that, having reviewed the pre-sentence report, Petitioner had no objections. A court may accept any undisputed portion of the pre-sentence report as a finding of fact. Fed. R. Crim. P. 32(i)(3)(A).[17]

Other than the tax loss issue in claim Petitioner's Claim (1) analyzed above, he has not alleged in his motion to vacate, or at any other point in the proceedings against him, that any other of the information in the pre-sentence report was incorrect or that he asked his counsel to raise an objection at his sentencing. Therefore, Petitioner cannot support a claim that his counsel was ineffective for failing to request a hearing under Rule 32.

Third, Petitioner claims that his counsel was ineffective for failing to object to the court's use of the 1996 and 1997 tax loss for the purposes of determining relevant conduct. As explained in the preceding section, the sentencing guidelines, which were mandatory at the time of Petitioner's sentencing, required that the Court take into account Petitioner's tax loss for

---

17 *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003), interpreting the prior Rule 32(c)(1) held that

> [t]he plea agreement did not bind Treadway to the stated drug quantities; he could have offered evidence that he should be accountable for a smaller amount. However, Treadway neither objected to the drug quantities reported in the PSR nor took issue with the sentencing court's determination of drug quantities at the sentencing hearing.

*Id.* at 884. The *Treadway* holding also clarified that if no challenge is made under Rule 32(c)(1), a sentencing court can rely on portions of the PSR that are not challenged by the defendant. *Id.*. at 886. Rule 32(i)(3)(A), as amended in 2002 , added a similar prevision that the sentencing court "may accept any undisputed portion of he presentence report as a finding of fact."

1996 and 1997.  Regarding the facts leading to the 14 point base offense level based on the tax loss calculations, that calculation as analyzed in the preceding section is found not to have been erroneous.  Thus, there can be no challenge to his counsel not having made what would have been a losing argument at sentencing.  Accordingly, Petitioner's counsel performed reasonably when he did not object to the court's use of the 1997 tax loss in calculating Petitioner's sentence.

## III.    CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Dkt. #20) **BE DENIED.**

Any objections to this Report and Recommendation must be filed within ten (10) days of its service.  28 U.S.C. § 636(b)(1); E.D. Mich. LR 72.1(d)(2).  Failure to file objections within the specified time constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: July 18, 2007                              s/Steven D. Pepe
Flint, Michigan                                  UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>July 18, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system, which will send electronic notification to the following: <u>Robert Haviland,AUSA, Charles A. Grossmann,Esq.</u>, and I hereby certify that I have mailed United States Postal Service the paper to the following non-ECF participants: <u>Jason Hollady #31114-039, Federal Prison Camp, P.O. Box 1000, Duluth, MN 55814-1000</u>.

<u>s/James P. Peltier</u>
U.S. District Court
600 Church St
Flint, MI 48502
810-341-7850
pete_peltier@mied.uscourts.gov